CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 10 2005

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JOHN WITTEN TUNNELL, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 4:03CV074 |
| | ) |
| FORD MOTOR COMPANY, | ) **MEMORANDUM OPINION** |
| | ) |
| Defendant | ) |

This matter is before the court on (1) Plaintiff John Witten Tunnell's ("Tunnell's") motion to award attorneys' fees and expenses in connection with sanctions imposed on Ford for its failure to comply with discovery orders during the course of this litigation; and (2) Plaintiff's objection to Defendant Ford Motor Company's ("Ford") taxation of costs.

### I.

As regards Tunnell's motion for attorneys fees and costs associated with Ford's discovery transgressions, the problems encountered by Tunnell due to Ford's failure to produce the Fire Report are amply documented in the multiple Reports and Recommendations and Orders entered in this case on that issue. Ford's argument that this issue was an irrelevant fishing expedition by Tunnell for which he is not entitled to recovery of fees is plainly wrong. Time and again, the court has made it clear to Ford that this document was relevant to the issues in this case and that it should have been produced during discovery. As it was not, and Tunnell only obtained it outside of the discovery process, Ford was ordered to reimburse Tunnell for the additional discovery expenses necessitated by its conduct during discovery in this case. Ford's contention that it need not reimburse Tunnell for these expenses because it ultimately prevailed at trial are unavailing. Regardless of the ultimate result in this case, Ford's discovery conduct was

inexcusable. In stark contrast to the requirements of the Federal Rules of Civil Procedure, Tunnell was forced to repeatedly spend valuable time and effort to obtain discovery orders to obtain documents and other discovery which the Rules plainly required Ford to produce in the first place. Ford has only itself to blame for the award of sanctions in this case.

Plaintiff initially claimed $150,315.00 in fees and $16,045.99 in costs, totaling $166,360.99. (Docket 521) In its reply to Ford's opposition, plaintiff reduced the fees by $6,000.00 and the expenses by $38.00 (Docket 527, at page 22, footnote 15), yielding the figure of $160,322.99.

Ford next argues that the rates charged by plaintiff's counsel are excessive, but provides nothing to support its assertion. Ford does not, for example, offer evidence of what it paid its own lawyers in this case. Given the difficulty and novelty of this case, particularly in terms of the technical, scientific and legal issues involved, the rates charged by Fred Smith and James Haskins appear reasonable. See EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). One adjustment to the fee request appears appropriate. The hourly rate for Scott Wall will be reduced from $200 to $150 per hour, given his role as second, and sometimes, third chair in this case. As Wall was the timekeeper on nearly half of the hours on the statement, totaling 231.25, the reduction of his rate to $150 reduces the total amount by $11,562.50 to $148,760.49. With this adjustment, the skill required to perform the legal services and the experience, reputation and ability of the attorneys involved all support the award of fees at those hourly rates in this case.

Review of the billing statements submitted by Tunnell reveals that the bulk of the time expended related to discovery ordered on the Fire Report and dealing with Ford's objections to

the discovery orders and sanctions and should be reimbursed by Ford. Because Ford had not produced the Fire Report despite years of discovery, the sanction imposed was intended to allow plaintiff to obtain discovery on that document at Ford's expense. While fees incurred to deal with objections to this discovery ruling are fair game for recovery as sanctions, fees incurred to oppose Ford's motion in limine to exclude the Fire Report are beyond the scope of the intended sanctions. As such, the fees requested are reduced by $4,400, reflecting 17.5 hours. See Ford's Opposition to Plaintiff's Motion for Fees and Costs at 12.

As to the magnitude of the amount of time and labor expended, there are countervailing considerations. On the one hand, there is no question that the discovery efforts reflected in the billing statements had to be done under urgent time constraints due to the then pending trial date and Ford's discovery deficiencies. On the other hand, the sheer number of hours, 580.80, reflected on the billing statement is enormous and reflects some redundancy of effort by the three lawyers working on the case. While a certain amount of overlapping effort is to be expected given the amount at stake in this case and the exigency of the circumstances, some reduction in the total fee to account for a certain amount of duplication of effort appears appropriate. Thus, the total amount of the fee will be reduced by 33 percent, yielding the sum of $85,996.18.

Likewise, the bulk of the expenses claimed to conduct the discovery appear reasonable and directly related to discovery on the Fire Report. A few items totaling $90.06, reflecting gift shop and other apparently personal purchases and honor bar charges are excluded, however, as

not being reasonably necessary to the discovery.[1] Thus, the amount of expenses awarded is $15,955.93.

As reflected in the Order filed herewith, the total amount of the fees and costs awarded Tunnell is $101,952.11.

## II.

Ford submitted a Bill of Costs totaling $116,920.69, to which Tunnell lodges certain objections. In deciding this motion to review taxation of costs, the court looks to Rule 54 of the Federal Rules of Civil Procedure, the statute governing taxation of costs and relevant case law. Rule 54 of the Federal Rules of Civil Procedure provides in pertinent part that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). It is the clerk of the court who "taxes" (assesses) costs. Id. On motion made within five days of taxation, the action of the clerk may be reviewed by the court. Id. The court reviews de novo the clerk's taxation of costs. 10 Moore's Federal Practice § 54.100[3], at 54-145. Rule 54 does not provide the district court with "unrestrained discretion to reimburse the winning litigant for every expense he has seen fit to incur." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). The court may only tax those costs authorized by statute. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). However, the court has wide latitude to award costs, so long as the costs are enumerated in the general taxation-of-costs statute, 28 U.S.C. § 1920. Id. Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed

---

[1] This figure includes the $38.00 reduction reflected in plaintiff's reply brief (Docket 527) at 22, fn. 15.

to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance. Principe v. McDonald's Corp., 95 F.R.D. 34, 36 (E.D. Va. 1982). The district court's award of costs will not be disturbed on appeal, absent an abuse of discretion. Herold v Hajoca Corp., 864 F.2d 317, 321 (4th Cir. 1988), cert. denied, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); see Flint v. Haynes, 651 F.2d 970, 973 (4th Cir. 1981), cert. denied, 454 U.S. 1151 (1982) (internal citation omitted).

### 1. Service Fees.

Tunnell objects first to the inclusion of fees charged by private process servers as taxable costs. Cases are split on the issue of whether fees for private process servers should be taxed as costs. In Goldstein, et al v. Costco Wholesale Corp., 2004 U.S. Dist. LEXIS 22041 (E.D. Va. 2004), and Cofield, et al v. Crumpler, 179 F.R.D. 510, 516 (E.D.Va. 1998), the Eastern District of Virginia noted the split in the cases and disallowed the taxation of such costs as Congress has not authorized fees of private process servers to be taxed as costs. Numerous courts, notably the Second and Eighth Circuits, have taken this position. See, e.g., United States ex rel Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2nd Cir. 1996); Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985); Pion v. Liberty Dairy Co., 922 F. Supp. 48, 53 (W.D. Mi. 1996); Zdunek v. Washington Metro. Area Transit Auth., 100 F.R.D. 689, 692 (D.D.C. 1983). On the other hand, in Hairston Motor Co., v. Northland Insurance Co., 1994 WL 874390 (W.D. VA), this court awarded such fees as taxable costs, and other courts have ruled the same. See Tang How v. Edward J. Gerrits, Inc., 756 F. Supp. 1540 (S.D. Fla. 1991), aff'd, 961 F.2d 174 (11th Cir. 1992); Roberts v. Homelite Div. of Textron, Inc., 117 F.R.D. 637, 641 (N.D. Ind. 1987); Card v. State Farm Fire & Cas. Co., 126 F.R.D. 658, 662 (N.D. Miss. 1989), aff'd,

902 F.2d 957 (5th Cir. 1990). The rationale of these cases is that given the apparent congressional intent to make service of process fees a taxable item and due to the substitution of private process servers for the U.S. Marshal in recent years, taxation of costs for special process servers is justifiable. Still other courts have allowed private processor fees, but only to the extent that they do not exceed costs charged by the marshal's office. Griffith v. Mt. Carmel Medical Center, 157 F.R.D. 499, 508 (D. Kan. 1994). In the absence of any guidance from the Fourth Circuit, the court will follow the Hairston precedent from this district and allow the taxation of fees of private process servers as costs in the amount of $1,863.00.

**2.    Court Reporter and Transcript Fees.**

Tunnell next seeks reduction in the amount of court reporter and transcript fees which should be taxed as costs. Tunnell maintains that the bill of costs ought not include amounts relating to depositions and hearings related to Ford's discovery transgressions, hearings for which the court entered detailed findings or daily trial transcripts. The court agrees that Ford may not tax as costs transcripts of depositions and hearings related to discovery taken on the Fire Report issue as its own discovery failures precipitated those expenses. Costs for those transcripts total $3,462.30.

Tunnell also argues that there was no need for transcripts of hearings where the court made detailed findings or reports and recommendations, suggesting an additional reduction of $2,059.60. The costs of these transcripts will be taxed.

As to the costs of daily transcripts, the case law is settled that costs of daily transcripts for the convenience of counsel are not taxable as costs. See Galella v. Onassis, 487 F.2d 986, 999 (2d Cir. 1973). While daily transcript costs may be recovered where it is shown that such

transcripts were a necessity, Ford makes no showing for the $14,880.70 claimed as taxable costs for daily transcripts here.

As such, the amount of the taxable costs is reduced to $2,754.70, to reflect reductions for transcripts concerning the issue of the Fire Report and for the cost of daily transcripts.

### 3. Exemplification, Copy and Other Costs.

Tunnell also objects to the large amount of costs – nearly $90,000 – claimed by Ford as "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." Pl.'s Mem. In Support Mot. To Review Clerk's Taxation of Costs at 7. Specifically, Tunnell maintains that charges totaling $82,728.64 are not taxable as costs under the statute because "these fees were paid for travel expenses, rental of office equipment, hourly charges for a digital technology specialist, exhibit enlargement, and standard legal texts and technical materials." Id.

Pursuant to 28 U.S.C. § 1920(4), costs may be taxed to the losing party where expenditures for exemplification and copies of papers were necessarily obtained for use at trial. Fees which are not specifically authorized by the statute, or which are not clearly intended to be covered by the statute, should not be taxed. See, e.g., Farmer, 379 U.S. at 235 ("the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute"); Crawford Fitting Co., 482 U.S. at 444-45 ("Any argument that a federal court is empowered to exceed the limitations explicitly set out in § 1920 without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes *in pari materia*.") (citations omitted).

First, Ford seeks to tax the hourly charges of Digital Litigation Solutions totaling $46,502.73. This firm was a digital technology specialist retained by Ford to assist it at trial.

7

Apparently, Ford chose to retain the services of a technology specialist to assist in the presentation of evidence, although the courtroom was equipped with readily accessible technology for enlarging any exhibit at no cost to the parties. Although Tunnell used the courtroom's technology to enlarge for the jury all documents, photographs, and exhibits introduced through direct examination of the witnesses he called in his case-in-chief, Ford chose to introduce a digital version of many of the same exhibits. As such, Tunnell contends that Ford's use of a digital technology expert to enlarge exhibits to present to the jury was not an expenditure necessarily obtained for use in the case.

There is no provision for taxing the hourly charges of a digital exhibit preparer or consultant. Taylor v. Black, et al., 1991 U.S. Dist. LEXIS 15787 (W.D. Va. 1991). In Taylor, the court declined to tax as costs charges for five enlarged charts and the hourly charges of the exhibit preparer. The court reasoned that because the same information contained in the enlarged charts was contained in other documents the plaintiff had introduced into evidence before the jury, the court would not award the substantial costs of preparing enlarged, "handsome" charts absent explanation why defendants could not have presented the information less expensively. Id., citing, Farmer, 379 U.S. at 235. The same rationale applies here.

Ford's decision to digitize the presentation of its evidence is not taxable to plaintiff. Ford chose to incur the substantial expense of a digital technology consultant to present its case, but as this cost was not necessary, it is not taxable. Not only were many of Ford's exhibits the same as those introduced by plaintiff, the courtroom was equipped with the technology to enlarge any exhibits that were necessary for the jury to view. Ford did not seek court approval before incurring these expenses and fails to provide a persuasive explanation why these exhibits could

not have been presented to the jury in a less expensive manner. Under these circumstances, Ford's decision to enlarge and digitize its trial exhibits should not be taxed upon Tunnell.

Related to the discussion of hourly charges by the digital technology specialist for enlarging exhibits are the charges by various vendors which Ford seeks to tax upon Tunnell for digitizing, enlarging and mounting numerous photographic exhibits in the amount of $27,009.36.[2] Tunnell previously introduced many of these photographs when he presented his case-in-chief, and the courtroom had the technology available to freely enlarge any exhibits the parties wished. See Water's Edge v. The Anden Group, 135 F.R.D. 129, 138 (E.D. Va. 1991) (denying taxation of substantial costs for enlargement and mounting of photographs as unnecessary means to show evidence to jury); Taylor, 1991 U.S. Dist. LEXIS at n.9 (citing, Farmer, 379 U.S. at 235). Nevertheless, Ford chose to incur great costs to enlarge photographs and digitally capture documents into presentation software. See e.g., Water's Edge, 135 F.R.D. at 138. Therefore, the court finds that these substantial costs were not necessary, particularly absent prior court approval or any persuasive explanation from Ford to justify this expense.

Second, Tunnell objects to various other costs totaling $12,939.20.[3] These costs include charges for copies of legal and technical research materials; renting of office equipment; and

---

[2] This total figure is the cost of combined expenses paid by Ford in the following amounts: $12,228.27 to Go Repro; $12,929.45 to Thomas Reprographics; $1,141.31 to Image Craft, LLC; and $710.33 to Superior Document Services.

[3] This total figure is the combined cost of expenses paid by Ford in the following amounts: $518.32 for copies of legal and technical research materials which included an opinion from this court, a federal rule of evidence treatise, a Ford 1999 wiring manual, and publications from the National Safety Council and the U.S. Department of Commerce concerning injury data and weather observations; $9,321.00 for the rental of office equipment; and $3,099.88 for shipping, delivery, and courier services.

shipping, delivery, or courier services. There is no statutory authorization to tax these costs, nor does Ford persuasively contend that Congress intended to include such items as taxable costs. See 28 U.S.C. § 1920; Farmer, 379 U.S. at 235; Crawford Fitting Co., 482 U.S. at 444-45; Sun Publishing Co., Inc., et al. V. Mecklenburg News, Inc., et al., 594 F. Supp. 1512, 1525 (E.D. Va. 1984) ("Costs such as travel expenses, delivery service, secretarial overtime, long-distance phone calls, postage, meals, etc., while properly billable to a client, are not properly taxed as costs by the Court.") (citations omitted); Barton v. Lane Co., 1995 U.S. Dist. LEXIS 20079, *9-10 (W.D. Va. 1995) (denying taxation of delivery costs upon reasoning that Federal Express charges are for convenience and are not included in the enumerated costs in 28 U.S.C. § 1920). These costs are not taxable to Tunnell.

Third, Tunnell objects to the costs taxed to him for copies of documents by various vendors for Ford totaling $5,538.00 on grounds that these copies "were not necessarily obtained for use in this case because the copies are not sufficiently identified to demonstrate the necessity for trial." Pl.'s Mem. In Support Mot. To Review Clerk's Taxation of Costs, 11. Tunnell maintains that these copy costs are not taxable under the statute because the invoices do not indicate how many multiple copies were made of a single document, nor does Ford provide evidence that the documents copied were actually used at trial. Tunnell therefore contends that it is impossible for the court to determine whether these copy costs were necessary for trial. However, the statute clearly authorizes the taxation of costs for copies of documents necessarily obtained for use at trial. 28 U.S.C. § 1920(4). See Barton v. Lane Co., 1995 U.S. Dist. LEXIS 20079, *11 (W.D. Va. 1995) ("Copies of papers necessarily obtained for use in the case may be taxed as costs.") (citing, 28 U.S.C. § 1920(4)). Ford's costs for the contested copies appears

reasonable upon review of the evidence submitted to the court. Additionally, these costs are supported by invoices from various vendors. See Goldstein v. Costco Wholesale Corp., 2004 U.S. Dist. LEXIS 22041, *20-22 (E.D. Va. 2004) (finding costs for copies of documents taxable where costs were supported by invoices from outside vendors and stated total pages copied). Therefore, the court finds that these costs are taxable under the statute, and will tax Tunnell accordingly.

For the foregoing reasons, a separate Order will be entered reducing the Bill of Costs taxed to Tunnell to $11,430.05, consisting of $1,863.00 for service fees; $2,574.70 for transcript costs; $1,454.35 for witness fees; and $5,538.00 for copying and exemplification.

Entered this 10th day of November, 2005.

Michael F. Urbanski
United States Magistrate Judge