CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
for FILED Danville
JUN 2 6 2006
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JOHN W. TUNNELL, *Plaintiff,* v. FORD MOTOR COMPANY, *Defendant.* | CIVIL ACTION NO. 4:03-CV-00074 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the motions of Plaintiff John W. Tunnell ("Tunnell") (1) to strike the affidavit of Clinton Forde, filed on April 5, 2006;[1] for sanctions, filed on December 7, 2005; and (3) for new trial, filed on December 9, 2005. These motions were referred to Magistrate Judge Michael F. Urbanski on January 31, 2006 for a report and recommendation pursuant to 28 U.S.C. § 636(b). Magistrate Judge Urbanski conducted a hearing on these motions on March 21, 2006, and issued his Report and Recommendation on April 7, 2006. Plaintiff and Defendant have both filed objections to the Report and Recommendation. Said objections having been timely and appropriately lodged, this Court must undertake a *de novo* review of those portions of the Report to which the objections have been made. *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982).

---

[1] Plaintiff's motion refers to the affiant as "Clinton Fore."

1

# I

The facts and procedural history of this case have been amply documented in previous opinions and need not be repeated in detail here. Suffice it to note that Defendant Ford Motor Company ("Ford") has failed to comply with its discovery obligations on multiple occasions as the case has progressed and has already been subjected to sanctions. At the close of Plaintiff's evidence at trial, the Court granted Ford's motion for a directed verdict. The Court held that the testimony of Tunnell's expert witness Jerry Wallingford as to defectiveness must be struck and thus that Plaintiff could not prove the first essential element of his case, that the product contained a defect that rendered it unreasonably dangerous for ordinary or foreseeable use. (See Op. of June 27, 2005, 9). Specifically, Plaintiff could not prove that his proposed battery cut-off device ("BCO") would have provided safety benefits that outweighed its safety risks. (Op. 10). The Court also noted that it had great doubts as to Plaintiff's ability to prove causation, and specifically as to whether a BCO would have been able to prevent the fire at issue. (Op. 15-16).

Plaintiff moved for a new trial based on evidence that Jaguar used a device in certain models that disconnected battery power to dashboard circuits in a crash. The Court denied this motion, noting that because Plaintiff did not specify what critical circuits his proposed BCO would disable, it was impossible to know whether his device was the same as the one in use.

Plaintiff now moves for a new trial and for sanctions because Ford failed to produce documents regarding a battery cut-off device used by Aston Martin ("AML/Tyco documents"), despite Plaintiff's requests and the Court's orders for production. These documents consist of twelve pages relating to Tyco battery disconnect switches, and specifically include: (1) a three page undated document titled "Battery Disconnect Switch (BDS) – TYCO;" (2) a six page

2

document dated October 17, 2000, including an unreadable schematic, titled "TYCO/Electronics/AMP, Description of usage, Battery Disconnect Switch," with the name Bernd Saffian appearing in the bottom corner; and (3) a three page document dated February 28, 2001 titled "TYCO Electronics/AMP, Specification of the Battery Disconnect Switch – Electronic (BDS-E) for Aston Martin Lagonda ("AML")" with the name Bernd Saffian in the bottom corner.

## II

Magistrate Judge Urbanski recommended that the Court deny Plaintiff's motions to strike the affidavit of Clinton Forde, for a new trial, and for default judgment, but grant the motion for sanctions. Plaintiff objects to the recommendation to deny the motions to strike, for new trial, and for default, while Defendant objects to the recommendation to grant the motion for sanctions. Plaintiff's objections to the denial of the motion for new trial are bottomed on his argument that the Magistrate Judge improperly applied Rule 60(b) to this case. Specifically, regarding the Magistrate Judge's Rule 60(b)(2) analysis, he argues that the AML/Tyco documents constitute newly discovered evidence and that the Magistrate Judge did not consider or apply the Fourth Circuit's definition of due diligence; that this evidence is not cumulative of the evidence adduced by Plaintiff; that the Magistrate Judge erred in accepting the affidavit of Clinton Forde as proof that the AML/Tyco documents did not describe a crash-activated battery disconnect; and that these new documents would indeed have produced a different outcome in this case.

Plaintiff also objects to the recommendation to deny his Rule 60(b)(3) motion for new trial. Specifically, he argues that the Report and Recommendation erroneously placed a due

3

diligence burden on Plaintiff. He also argues that the Report erred in requiring Plaintiff to prove by clear and convincing evidence that the new documents prevented him from fully and fairly presenting his case. Further, having found that Ford acted deliberately in failing to produce the AML/Tyco documents, the Report should have given Plaintiff the benefit of a presumption of substantial interference with his ability to present his case. Thus Ford should have been required to prove, by clear and convincing evidence, that the consequences of its misconduct were insignificant, and it was therefore error for the Magistrate Judge to conclude that the AML/Tyco documents were insignificant.

Finally, Plaintiff objects to the recommendation that the Court deny his Rule 37 motion for default judgment. He argues that the Report and Recommendation erroneously placed a due diligence burden on Plaintiff as a requirement for default judgment and erroneously concluded that Plaintiff had not suffered sufficient prejudice to warrant default judgment.

Defendant, on the other hand, objects to the Magistrate Judge's recommendation of sanctions in the amount of all Plaintiff's attorneys fees incurred in discovery disputes in this case. Specifically, Ford argues that it was never required to produce the AML/Tyco documents, and that even if it were, the recommended sanction is inappropriate. The Court will address each of these objections in turn.

### III

Rule 60(b) offers an extraordinary remedy and should only be invoked in exceptional circumstances. *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979). Rule 60(b)(2) provides, in pertinent part, that a court may relieve a party from a final judgment or order based on "newly discovered evidence which by due diligence could not have been discovered in time to

4

move for a new trial under Rule 59(b)." A party seeking relief under Rule 60(b)(2) must demonstrate that (1) the evidence is newly discovered since the judgment was entered; (2) the movant exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that it is likely to produce a new outcome upon retrial or would require the judgment to be amended. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). The Fourth Circuit has denied new trials based on allegations of newly discovered evidence where the new evidence is similar to evidence already available and would add nothing to the district court's consideration of the case. *U.S. v. Belle View Apartments, Sec. 1*, 217 F.2d 636, 639-40 (4th Cir. 1954). *See also Kay v. Cessna Aircraft Co.*, 548 F.2d 1370, 1373-74 (9th Cir. 1977).

Plaintiff argues that the AML/Tyco documents are not cumulative because they offer technical specifications and describe a BCO that was designed for a specific production vehicle rather than a generic switch used for promotional purposes. This information, Plaintiff argues, is the best evidence of the feasibility and functionality of the BCO advocated by Plaintiff. It is clear, however, that the documents at issue describe the same type of battery disconnect switch of which Tunnell was already aware, even if the technical specifications were different. Plaintiff knew, after the Thrush deposition, that Tyco had developed a battery disconnect switch capable of leaving some circuits live while disconnecting others and that Aston Martin was buying this switch. (Thrush Dep. 12-13). Further, the BCO described in the AML/Tyco documents was apparently not crash-activated in production models, a fact which Tunnell acknowledges. (Pl's Br. in Support of Objections 14-15). Hence, Tunnell's argument that these documents provide evidence of feasibility and functionality fails, because they do not address a crash-activated BCO

5

that was actually used. Absent this evidence, the AML/Tyco documents do not offer significant new evidence beyond what Plaintiff already knew and would add nothing to the Court's consideration of the case.

More importantly, the AML/Tyco documents fail to satisfy the final consideration in a Rule 60(b)(2) inquiry: whether the new evidence is likely to produce a different outcome if the case were retried. The AML/Tyco documents are not likely to do so. The Court granted Ford's motion for a directed verdict because Tunnell could not prove the existence of a product defect and because he could not prove that his proposed BCO would have provided safety benefits that outweighed its safety risks. The existence of the AML/Tyco documents does nothing to salvage the testimony of Jerry Wallingford, which failed even before reaching the risk-benefit issue. (Op. of Sept. 2, 2005, 3). As the Court noted in its Memorandum Opinion granting the directed verdict, Wallingford never actually opined that a defect existed. (Op. of June 27, 2005, 4-6). Further, the AML/Tyco documents would have provided no more evidence of a defect than the evidence Plaintiff introduced regarding Jaguar's use of a BCO. The AML/Tyco documents themselves indicate that the BCO described was not crash-operated because of "energy management requirements," (Ex. E, Pl.'s Mot. for Sanctions, Dec. 7, 2005), and the owner's manuals submitted by Ford corroborate this.[2] Hence, it appears that the switches actually used by

---

[2]The owners manuals were submitted as exhibits to the Affidavit of Clinton Forde, which was filed in its final, sworn version on March 31, 2006, ten days after the various motions at issue were heard before Magistrate Judge Urbanski. Plaintiff moved to strike the affidavit based on its late filing and other considerations. Magistrate Judge Urbanski recommended denial of this motion, and while Plaintiff now argues that it was erroneous to accept the affidavit as proof that the battery disconnect switch used by Ford was manually operated rather than crash-activated, he does not specifically object to this recommendation. Given the evidence before it, the Court determines that the motion to strike shall be denied. The Court also notes that Plaintiff does not challenge the veracity of the owner's manuals, which at the very least indicate that the switch

6

Aston Martin were not sufficiently similar to Plaintiff's proposed BCO to provide the risk-benefit evidence Plaintiff seeks.

In addition, the documents do not speak to the Court's concerns regarding causation. Although the Court did not base its grant of a directed verdict on Plaintiff's lack of evidence on this point, causation is still an element that Plaintiff must prove, and this evidence if admitted would have done nothing to assist Tunnell in proving that his proposed BCO would actually have prevented the fire at issue. In light of these considerations, the Court need not reach the other prongs of the Rule 60(b)(2) test, as it is clear that Plaintiff's motion under Rule 60(b)(2) must be denied.

In addition, Plaintiff's motion under Rule 60(b)(3) also fails. To prevail under Rule 60(b)(3), a plaintiff must (1) have a meritorious defense; (2) prove misconduct by clear and convincing evidence; and (3) prove the misconduct prevented it from fully presenting its case. *Square Construction Co v. Washington Metropolitan Transit Authority*, 657 F.2d 68, 71 (4th Cir. 1981). When considering these proofs, the court must "balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id.* The new evidence presented in a Rule 60(b)(3) motion need not alter the outcome of the proceeding in order to warrant a new trial. *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994).

Plaintiff argues that the Magistrate Judge erred in placing a due diligence burden on Plaintiff under Rule 60(b)(3) and in requiring that Plaintiff prove by clear and convincing evidence that the failure to produce the new documents prevented him from fully and fairly

---

actually installed on the production models described was not crash-activated.

7

presenting his case. As Plaintiff correctly notes, there is no due diligence requirement associated with Rule 60(b)(3). Nonetheless, the fact that Plaintiff was already aware of the essential information in the AML/Tyco documents speaks to the third prong of a Rule 60(b)(3) inquiry. Because eight months before trial Plaintiff already knew the crucial information regarding the BCO manufactured by Tyco and used by Aston Martin, Defendant's misconduct did not prevent Plaintiff from fully proving this aspect of his case. This line of reasoning imposes no due diligence burden on Plaintiff, but merely considers whether any misconduct by Defendant actually precluded Plaintiff's presentation of his case.

Plaintiff also argues that once he has shown Defendant's misconduct by clear and convincing evidence, and demonstrated that that misconduct was knowing or deliberate, he need make no further showing. *See Anderson v. Cryovac, Inc., et al*, 862 F.2d 910, 926 (1st Cir. 1988). The Court can find no support for this proposition within Fourth Circuit precedent, and indeed the First Circuit itself later ruled that where a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party's misconduct, the trial court may deny relief under Rule 60(b)(3). *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 21-22 (1st Cir. 2002). The Magistrate Judge noted, and this Court agrees, that there is no evidence Defendant's actions prevented Plaintiff from fully and fairly presenting this aspect of his case. In balancing the importance of finality against the need to do justice in light of all the facts, the Court finds that the situation at hand simply does not warrant relief under Rule 60(b)(3). Therefore, the Court denies Plaintiff's motion.

## IV

Plaintiff also moves for entry of default judgment under Rule 37. A district court has

8

wide discretion to impose sanctions for a party's failure to comply with discovery orders. *Mutual Federal Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). This discretion is not limitless, however, and the Fourth Circuit has developed a four-part test to determine what sanctions to impose. In considering which sanctions are appropriate to visit on a noncomplying party, a court should consider (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncomplying party caused, an inquiry which also examines the materiality of any evidence not produced; (3) the need for deterrence of this sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.* A court must act with particular caution when considering a sanction of default judgment, since such a sanction implicates both constitutional and policy considerations. *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503 (4th Cir. 1977). Therefore, a court should only award default judgment where a party has shown that the failure to disclose "materially affects the substantial rights of the adverse party" and is "prejudicial to the presentation of his case." *Id.* (citations omitted).

Plaintiff objects that the Magistrate Judge imposed an erroneous due diligence requirement as part of the Rule 37 analysis. He also argues that the failure to produce the AML/Tyco documents materially affected his substantive rights and prejudiced his presentation of his case. Further, he argues that because of the importance of these documents and Ford's persistent misconduct up to this point, he has met all of the Fourth Circuit's requirements for the entry of default judgment.

The Court disagrees. As noted above regarding Tunnell's Rule 60(b)(3) motion, a consideration of the degree of prejudice Defendant's misconduct has actually caused is not the same as the imposition of a due diligence requirement. Rather, a consideration of whether Ford's

9

non-production materially affected Tunnell's substantive rights and prejudiced his presentation of the case necessarily involves evaluation of all relevant facts. In this case, the Court finds that Ford's failure to produce the AML/Tyco documents simply did not cause Tunnell such significant prejudice that default is the appropriate remedy. Although the documents were responsive to Tunnell's requests and Ford was obligated to produce them, they are not as significant as Tunnell argues. The documents themselves suggest that the BCO was not used in crash situations, a suggestion corroborated by the Aston Martin owners manuals submitted by Defendant. Further, the documents date from after Plaintiff's accident and thus do not establish that a BCO was feasible within the relevant timeframe. Nor can the AML/Tyco documents remedy the flaws in Plaintiff's case caused by Wallingford's testimony that the 1999 Mustang was not defective. Rule 37 imposes a high standard for the award of a default judgment, and here the Court cannot conclude that the failure to disclose materially affected Tunnell's rights or substantially prejudiced his presentation of his case. Therefore, his motion under Rule 37 must also be denied.

## V

This is not to say, however, that Ford's conduct throughout this case has been blameless. As the record reveals, the non-production of the AML/Tyco documents is only the last in a string of discovery abuses propounded by Defendant. The Magistrate Judge considered the four-part test described above and determined that a sanction of attorney's fees and costs related to Ford's many discovery failures was warranted. Specifically, he recommended that Plaintiff be awarded the attorneys fees and costs incurred in all of the federal court motions associated with discovery issues from the date of the case's filing through the present, including costs and fees associated

with motions to compel, objections, other court filings and proceedings, and the current motion for sanctions. This amount would not include any fees and costs previously awarded on November 10, 2005.

Ford argues that the Magistrate Judge erred in imposing sanctions because the AML/Tyco documents were not actually requested in discovery, and that even if they were, the sanction imposed is excessive. Neither argument is persuasive. As a preliminary matter, the Court notes that Ford's changing rationales for its non-production of these documents suggest that it is not being completely honest with the Court and opposing counsel. Ford initially stated that its failure to disclose these documents was an oversight (Br. in Op. to Mot. for Sanctions, Jan. 30, 2006). Ford later averred that the non-production was deliberate because the documents were not relevant. (Ex. 1, Hr'g, March 21, 2006). In its objections to the Magistrate Judge's Report and Recommendation, Ford now recasts the latter argument and states that it was not required to produce the documents at all, because they were not responsive to any discovery requests. (Def.'s Partial Objection, Apr. 24, 2006). This last contention is no more persuasive than were earlier arguments. As Plaintiff notes, Aston Martin is a brand of Ford Motor Company, the defendant in this case. The argument that "Aston Martin" received the documents from Tyco and that Defendant received the documents from "Aston Martin" is thus disingenuous.

In addition, the documents are responsive to Plaintiff's Discovery Request No. 21.[3] Defendant argues that Plaintiff's definition of "battery disconnect" limits the documents sought in Request No. 21 to crash-sensing and crash-activated devices. He also argues that in a hearing

---

[3]Discovery Request No. 21 states, "Produce all documents that pertain to, related [sic] to, describe or mention placing battery disconnects on other Ford Motor Company owned vehicle lines, including, but not limited to . . . Austin [sic] Martin." (Report and Recommendation 8 n.1).

11

on March 17, 2004, Magistrate Judge Urbanski further limited this request to "documents that relate to the use or implementation of a battery disconnect device." (Ex. A, Def.'s Partial Objection). Plaintiff's definition of "battery disconnect," however, refers not only to a complete device, but to "any . . . component . . . which, either separately or in combination" detects a crash and shuts off electrical circuits. (Def.'s Partial Objection 4). It is clear from the AML/Tyco documents that the BCO at issue was designed to detect a crash in combination with other components, even if those components were not actually used in Aston Martin vehicles. For this same reason, Defendant's argument regarding the limitation imposed by the Magistrate Judge also fails. The AML/Tyco documents at issue relate intimately to the actual use of the device by giving schematics, technical data, and function information. Even if the device as used by Aston Martin was manually operated rather than crash-sensing, it was certainly a "component" or "part" of a crash-activated BCO, as required by Plaintiff's discovery request. Indeed, Defendant admits as much. (See Aff. of Clinton Forde, March 31, 2006, ¶ 5). Thus, these documents were indeed responsive to Plaintiff's requests, and Ford was obligated to disclose them.

The Court finds no merit to Ford's argument that the sanctions imposed are inappropriate. Ford argues that the sanction is overbroad because it would include fees and costs incurred in disputes that had nothing to do with battery disconnect documents. Further, Ford argues that the Magistrate Judge erred in failing to consider the absence of prejudice to Plaintiff. The sanctions at issue here are appropriate not merely because of Defendant's behavior in this instance, but because of Defendant's whole course of behavior throughout this case. If this were Ford's only infraction, such harsh sanctions would not be warranted; however, this is only one in a series of discovery abuses by Ford. A district court has broad discretion in imposing sanctions, *Mutual*

12

*Federal Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989), and here the Court has considered not just Ford's treatment of the AML/Tyco documents, but the cumulative nature of Ford's misbehavior. Clearly, the sanctions will cover more discovery disputes than those related to battery cut-off devices, but given Ford's repeated noncompliance with its discovery obligations and the Court's orders, such broad sanctions are proper.

As noted above, in determining whether to impose sanctions, a court should consider (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncomplying party caused, an inquiry which also examines the materiality of any evidence not produced; (3) the need for deterrence of this sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.* Here, Ford's continued revision of why it failed to produce the AML/Tyco documents leaves the Court deeply skeptical of its good faith at this point. Indeed, given the Magistrate Judge's orders for discovery in this case, the Court cannot see how Ford could have been aware of these documents and withheld them in good faith. Further, it is clear that this kind of persistent obstructionism merits emphatic deterrence, and that previous sanctions imposed by the Magistrate Judge did not have the desired effect. Although Plaintiff was not materially prejudiced by Ford's nondisclosure, the other three factors in this inquiry weigh so heavily in favor of sanctions that the Court determines they must be imposed. The Court therefore finds that sanctions are necessary to deter future noncompliance and that they are warranted in light of the record as a whole.

## VI

In light of the factual evidence, and the controlling law, the Report and Recommendations, and the parties' objections thereto, the Court determines that all objections to

13

the Report and Recommendations shall be overruled, that Plaintiff's motions for new trial, default judgment, and to strike the Affidavit of Clinton Forde shall be denied, and that Plaintiff's motion for sanctions shall be granted.

An appropriate order shall issue this day.

ENTERED: *Norman K. Moon*
U.S. District Judge

June 26, 2006
Date

14

Case 4:03-cv-00074-NKM-mfu   Document 598   Filed 06/26/06   Page 14 of 14   Pageid#: 12531